# CIRCUIT COURT. U. S.

## CHARLESTON, MARCH, 1819.

*Consul of Spain*
v.
*The Schr. Conception and cargo.*
} DECREE.

*Johnson*, J. — This vessel and cargo are clearly Spanish property, and the Corvette La Union, by which she was captured, was a commissioned cruiser of the republican or revolted province, (for names prove nothing) of Buenos Ayres. The prize put into this port in distress ; was libelled by the Spanish consul in behalf of the Spanish owners, and by the decree of the district court, ordered to be restored, on two grounds : 1st. That the courts of this government cannot recognize the commission under Buenos Ayres. 2d. That the capturing vessel had recruited men while lying in the mouth of the Mississippi in the month of April last, which men were on board at the time of this capture. As to the second ground, I cannot think that the evidence was such as sanctioned the decree of the district court; for besides that the fact is but feebly established by the witnesses who swear to it, when their testimony is compared with each other, and with that of the officers, as the only witness who testifies to the national character of the four men said to have been enlisted, proves them to have been foreigners, not Americans, and to have come on board the capturing vessels to enter. The case has never been included in any of the penal laws passed by congress on this subject, nor have foreign governments any ground for claiming from the United States that such a case should have been included. The fact of illegal equipment, therefore, I consider as unsubstantiated. With regard to the first and principal ground on which the decree is founded, I am of opinion that it is one of more delicacy than real difficulty.

To have dismissed the libel, it was not necessary to recognize the independence of Buenos Ayres as one of the family of nations. The indisputable fact known to all the world, and recognized by our own executive, in many official communications, of the existence of .open,

*[margin note]* Courts exercising jurisdiction of international law, may deduce the fact of national independence from history, and an explicit official recognition is not necessary

CHARLES-
TON.
March, 1819.

Consul of
Spain
v.
The Schooner
Conception
and cargo.

solemn war between Spain and an extensive and power-
ful colony, is enough to impose on us, as a nation, the
duties of neutrality.    The colony asserts, the social com-
pact is violated by the parent state, and the state of de-
pendence or allegiance no longer existing.    On this ques-
tion an appeal is made to the God of armies, and no in-
ferior tribunal ought to interfere.    The colony claims
from us no acknowledgment of her independence; she
only demands of us to leave her in possession of what
she can win by arms.    Spain, unable to rescue by force,
solicits our aid to seize, in violation of the rights of hos-
pitality, the property that has been forced into our har-
bours : our duty is to lend our aid to neither, but to leave
them as we find them, rigidly adhering to the duties of
neutrality.    This is not a p'ratical capture, and therefore
not a case within the provisions of our treaty with Spain.
It is a seizure in the exercise of the rights of war, not
by one who wages war against the human race, but one
who has singled out Spain for the sole antagonist.    All
seizures of property within our limits, we are bound by
that treaty to prevent, but the duty to restore, is confi-
ned solely to the case of rescue from those whom we
can recognize as pirates.    In the case of Palmer and
others, in the supreme court, the principles laid down by
the chief justice excluded all idea that this was a pirati-
cal capture.    It was then a seizure *jure belli*, and the
rights of war are necessarily commensurate with the
power of maintaining it openly and solemnly, more es-
pecially upon the high seas ; the jurisdiction of which is
not susceptible of that demarkation and appropriation
which takes place on the land.    This conflict has long
been carried on between the colony and parent state.
The event is at least doubtful.    It is on both sides an as-
sertion of a supposed existing right, and neither can
claim of a nation to whom their disputes are immaterial
any act of interference which may involve it in a con-
test with the victor.    Much has been said, and some cases
and opinions cited to show that this court cannot recog-
nize the independence of a revolted colony, until that
recognition shall have proceeded from our own govern-
ment or the parent state.    There was a time when this
country negotiated and fought to maintain a different
doctrine ; and it will be recollected that, in the opinion

before expressed, I have not thought it necessary, in this case, to assert a different doctrine.

But as the doctrine in this point is no where laid down fully to my satisfaction, I will embrace this opportunity to state briefly my views of the subject. The recognition of our own government, whatever be the state of fact, removes all question of doubt, and our courts must consider the governments thus recognized, as independent; and so the recognition of the parent state actually produces a state of independence. But courts exercising jurisdiction of international law, may often be called upon to deduce the fact of national independence from history, evidence, or public notoriety, where there has been no formal public recognition. The actual possession and long exercise of all the attributes of a state of independence, may be legally resorted to, without giving just cause of umbrage to a nation that does not possess the power to subjugate a revolted colony. There exists many nations at this day, which may claim, of courts of international law, all the rights of independent nations, and may be judicially recognized as such, notwithstanding no act of government has acknowledged them in that capacity; and some which hold it altogether by the sword, which acquires it when the parent state relinquishes the conflict, or plainly evinces an inability to pursue it with success. I should say her recognition in words is unnecessary, and should our own government ever exercise, towards a revolted colony, those acts of comity or communication, which are known and practiced in the intercourse of nations, I should consider all positive explicit recognition as unnecessary to support the claims of such states to a judicial recognition. The establishment of many such facts would, in my estimation, supersede the necessity of explicit official recognition. Our own courts have in several instances been called on to express opinions on this subject; and although the opinions which they have expressed, may, in their language, appear very general, yet that language has always been used in reference to cases in which the conflict was actually kept up. In the case of Palmer, the chief justice has expressly limited his observations to such a case, *flagrante bello*; it is a question of policy; there is an actual absence of such evidence as a court of justice can act

CHARLES-
TON,
March, 1819.

Consul of
Spain
v.
The schooner
Conception
and cargo.

CHARLES-
TON,
March, 1819.

Consul of
Spain
v.
The schooner
Conception
and cargo.

upon, and the question is altogether one on which the executive or legislative power is called to act. Decree reversed, property restored, and libel dismissed with costs.

The decree of judge JOHNSON, in the case of the Spanish schooner *Conception*, was appealed to the supreme court at Washington.